IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KRYSTAL F.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 3:25-cv-00915-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Kyrstal F. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and remands for further administrative proceedings.

///

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party and lay witness.

**STANDARD OF REVIEW**

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

///

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff filed her SSI application on November 28, 2022, alleging disability beginning on January 1, 2020. (Tr. 18, ECF No. 8.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (*Id.*) Plaintiff and an impartial vocational expert ("VE") appeared and testified at a hearing before an administrative law judge ("ALJ") on July 30, 2024. (*Id.* at 38-49.) On September 17, 2024, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 18-32.) On May 9, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 3-6.) Plaintiff now seeks judicial review of that decision.

### II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

///

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citation omitted). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III. THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff was disabled. (Tr. 18-32.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 28, 2022, the application date. (*Id.* at 20.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: posttraumatic stress disorder ("PTSD"), major depressive disorder, gastroesophageal reflux disease, and alcohol and stimulant use disorders. (*See id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment that met or medically equaled a listed impairment. (*Id.* at 21.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work except she can only frequently climb ramps and stairs, occasionally climb ladders and scaffolds, frequently reach overhead using the right upper extremity, perform frequent handling and fingering with the right upper extremity, and is limited to simple tasks. (*Id.* at 22.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 31.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform, including marker, routing clerk, and housekeeping cleaner. (*Id.* at 32.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act from November 28, 2022 through the date of decision. (*Id.*)

**DISCUSSION**

Plaintiff raises three primary arguments on appeal. First, Plaintiff argues that the ALJ improperly evaluated the medical opinions of Kipp Bajaj, ND ("Dr. Bajaj"), William Bahrenburg, QMHA ("Bahrenburg"), and Chelsea MacLane, Psy.D ("Dr. MacLane"). (Pl.'s Opening Br. ("Pl.'s Br.") at 3-17, ECF No. 9.) Second, Plaintiff argues that the ALJ erred by discounting the lay witness testimony of Plaintiff's support specialist at Central City Concern, Jennifer Gambill ("Gambill"). (*Id*. at 17-20.) Third, Plaintiff argues that the ALJ erred by failing to account for all of Plaintiff's limitations in the RFC. (*Id*. at 20-23.)

For the reasons discussed below, the Court reverses the Commissioner's decision and remands for further administrative proceedings.

**I. MEDICAL OPINION EVIDENCE**

Plaintiff argues that the ALJ did not provide sufficient explanations for discounting the medical opinions of Dr. Bajaj, Bahrenburg, and Dr. MacLane and that substantial evidence did not support the ALJ's evaluations of those medical opinions. (Pl.'s Br. at 3-17.) The Commissioner responds that the ALJ appropriately evaluated the supportability and consistency of the three opinions. (Def.'s Br. at 2-7, ECF No. 11.)

**A. Applicable Law**

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts.

404 & 416)). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b)).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20

C.F.R. § 416.920c(b)(2)). "Only if the ALJ finds two or more contradictory medical opinions both equally well-supported and consistent with the record must the ALJ then articulate how he or she considered these other factors." *Id.* at 1214 (simplified) (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

Where, as here, the new regulations apply, a district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)); *see also Stiffler*, 102 F.4th at 1108 ("In sum, the ALJ's evaluation of [the physician's] medical opinion is supported by substantial evidence.").

**B. Analysis**

The Court concludes that the ALJ erred in evaluating the medical opinion evidence.

**1. Dr. Bajaj's Opinion**

On July 31, 2024, Dr. Bajaj, Plaintiff's treating provider, completed a physical capacity statement assessing Plaintiff's limitations resulting from her impairments. (Tr. 2250-53.) Dr. Bajaj diagnosed Plaintiff with major depressive disorder, anxiety disorder, PTSD, moderate persistent asthma, and chronic back pain. (*Id.* at 2250.) He stated that during an average eight-hour workday, Plaintiff could sit for less than two hours, stand or walk for about two hours, and walk for four blocks, and would need to shift positions at will from sitting to standing or walking

for up to thirty minutes. (*Id.*) Dr. Bajaj reported that Plaintiff would need to rest and take additional unscheduled breaks during an eight-hour workday. (*Id.* at 2251; *see also id.*, including further limitations with respect to crawling, reaching, grasping, climbing, bending, and lifting, among others.) He opined that Plaintiff's symptoms would interfere with her attention and ability to concentrate and she would be unable to perform simple two-step tasks for more than two-thirds of the workday. (*Id.* at 2252-53.) Dr. Bajaj concluded that Plaintiff would have "bad days" at least twice a month when she would likely be absent from work due to her conditions. (*Id.* at 2253.)

The ALJ found that Dr. Bajaj's opinion was not persuasive because it was not consistent with the record or supported by the medical evidence. (*Id.* at 29.) With respect to supportability, the ALJ noted that Dr. Bajaj diagnosed Plaintiff with major depressive disorder, anxiety disorder, PTSD, moderate persistent asthma, and chronic back pain, noted poor tolerance in crowded public places and night terrors that disrupted sleep, and a prescription to treat her relapse of gastrointestinal symptoms. (*Id.*) In light of these limited treatment notes, the ALJ found that "Dr. Bajaj's explanation and treatment notes do not support the limitations in his opinion." (*Id.*)

With respect to consistency, the ALJ cited several physical examination findings in Plaintiff's medical record, including 5/5 strength, intact and equal sensation in the upper and lower extremities bilaterally, no abdominal tenderness, normal gait and station, denial of shortness of breath, chest pain, joint pain, depression, and anxiety, and steady and non-antalgic gait without the use of an assistive device. (*Id.*) The ALJ also noted that Dr. Bajaj's opinion was inconsistent with the state agency physical consultants' less-restrictive opinions. (*Id.*)

An ALJ may discount a medical opinion based on a lack of objective medical evidence. *See Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (holding that the ALJ did not err in

discounting medical opinions that were unsupported by the objective medical evidence (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004))). The Court agrees that neither Dr. Bajaj's treatment notes or explanations nor the medical record supported his proffered limitations with respect to Plaintiff's physical limitations, such as walking, standing, sitting, climbing, lifting, reaching, and handling, and Plaintiff points to no objective medical evidence in Dr. Bajaj's opinion that supports the degree of these physical limitations. (*See* Pl.'s Br. at 8-12; Pl.'s Reply Br. at 5-6, ECF No. 12.) Thus, the Court finds that the ALJ did not err in discounting these recommended physical limitations in Dr. Bajaj's opinion.

However, the ALJ failed to address Dr. Bajaj's opinion that the physical effects of Plaintiff's mental health impairments—including frequent vomiting and sleep interruption—would interfere with Plaintiff's ability to pay attention and concentrate at work and would result in a need for breaks and frequent absenteeism. (Tr. 29.) Unlike the summary of physical findings in the medical record on which the ALJ relied to discount most of Dr. Bajaj's opinion, the ALJ did not similarly conclude that the record lacks objective medical evidence relating to Plaintiff's physical symptoms secondary to her mental impairments. As a result, remand for further proceedings is necessary to allow the ALJ to address these aspects of Dr. Bajaj's opinion.

**2. Bahrenburg's Opinion**

On July 24, 2024, Bahrenburg completed a mental residual functional capacity assessment and opined that Plaintiff's mental functioning fluctuated depending on her symptoms. (*Id.* at 2153-55.) Bahrenburg opined that most of the time, Plaintiff's ability to understand, remember, or apply information was mild or moderately limited, but that twenty-five to thirty percent of the time Plaintiff's ability was extremely limited. (*Id.* at 2153.) He opined that when Plaintiff experienced increased symptoms, she was unable to understand, remember, or apply information. (*Id.*) Similarly, he reported that Plaintiff could interact with others unless presented

with hostility or conflict. (*Id.* at 2154.) Bahrenburg estimated that Plaintiff would be "unable to attend work due to symptoms approximately [forty percent] of the time." (*Id.* at 2155.) He explained that Plaintiff was unable to manage her psychologically-based symptoms because she "enters [a] state of hyperarousal consistent with a trauma response while experiencing symptoms." (*Id.*) Bahrenburg reported that Plaintiff's conditions existed as described for more than four years and persisted during periods of sobriety. (*Id.*)

The ALJ found Bahrenburg's opinion "not persuasive" because it was "not consistent with the record or supported by the evidence." (*Id.* at 28.) Plaintiff argues that the ALJ erred by not supporting his findings with substantial evidence and by improperly cherry-picking the record to justify his findings. (Pl.'s Br. at 4-8.) The Commissioner responds that the ALJ supported his decision with substantial evidence. (Def.'s Br. at 2-4.)

With respect to supportability, the ALJ found that Bahrenburg's "rational[e] does not provide an[] objective rationale that explains the severe limitations opined by Mr. Bahrenburg." (Tr. 28.) However, the ALJ did not explain how Bahrenburg's opinion lacked an "objective rationale." Bahrenburg explained that Plaintiff is generally only mildly or moderately limited but that she "enters [a] state of hyperarousal consistent with a trauma response while experiencing symptoms" which results in more extreme limitations. (*Id.* at 2155.) It is unclear from the ALJ's explanation if he concluded that Plaintiff's trauma response history was not sufficiently objective,[2] or if there was not sufficient objective medical evidence to support Bahrenburg's opinion regarding how frequently Plaintiff would experience more extreme limitations. (*See, e.g.*, *id.* at 28, "Regarding supportability, Mr. Bahrenburg stated that 25 to 50 percent of the time,

---

[2] Plaintiff cites objective medical evidence in the record documenting her consistent PTSD symptoms, suicide risk, panic attacks, and disrupted sleep. (Pl.'s Reply Br. at 2, citing Tr. 2160-63, 2165-66, 2168-72, 2174, 2177.)

the claimant's symptoms increase and her functioning becomes extreme.") Because the Court cannot discern the ALJ's reasoning, the Court finds that the ALJ erred in evaluating the supportability of Bahrenburg's opinion. *See Brown-Hunter*, 806 F.3d at 492 ("A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006))).

With respect to consistency, the ALJ found that Bahrenburg's opinion was inconsistent with Plaintiff's improvement of symptoms with medication, normal status exams, and her ability to ride the bus. (Tr. 28-29.) The Court agrees with Plaintiff that the ALJ improperly cherry-picked evidence to support his findings while ignoring contradictory evidence within the same treatment notes. *See, e.g.*, *Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (holding that a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence" (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989))); *see also Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020) (explaining that an ALJ cannot "cherry-pick" from the record to support findings while ignoring evidence that contradicts those findings).

For example, the ALJ cited Plaintiff's improvement with medication but did not acknowledge that Plaintiff experienced vomiting spells that prevented her from taking her medication. (*See* Tr. 28, citing *id.* at 221, 1423; *see also* Pl.'s Br. at 7, citing Tr. 1886-91, 2171.) Furthermore, the medical records on which the ALJ relied also reflected that Plaintiff continued to struggle with attention and organization, was unable to keep her house clean, and walked between rooms listlessly. (*Id.* at 28, citing *id.* at 1666; Pl.'s Br. at 7-8, citing Tr. 1666-67.)

///

The ALJ also cherry-picked medical records to support his finding that Bahrenburg's opinion was inconsistent with the medical evidence. (Pl.'s Br. at 6-7.) For example, the ALJ cited notes from an April 2023 mental health appointment, noting that Plaintiff was "described as being pleasant and open" and "was noted to make good eye contact and be well groomed." (Tr. 29, citing *id.* at 1994.) The same medical note, however, also reported that Plaintiff's mood was anxious and overwhelmed. (*Id.* at 1994.) Also, in the same note, Plaintiff's provider noted that Plaintiff's "[s]evere panic has been worse lately—comes on randomly—tunnel vision, can't breathe" and "[Plaintiff] [d]escribes flooding—after panic has a whole day of emotional exhaustion." (*Id.*) The ALJ also relied on a June 2024 appointment to establish that Plaintiff's "[t]houghts were completed normally" (*id.* at 29, citing *id.* at 2163), but in that same note, the provider described Plaintiff's mood as "agitated and tense" and rated Plaintiff as having a "moderate" risk of suicide. (*Id.* at 2163.)

Finally, the ALJ found Bahrenburg's proffered limitations inconsistent with the record because "[Plaintiff] rides the bus." (Tr. 29, citing *id.* at 1345.) However, Plaintiff described experiencing great anxiety on the bus and reported that she left the bus "visibly shaken." (*Id.* at 1345.)

For these reasons, the Court finds that the ALJ erred in evaluating Bahrenburg's medical opinion.

**3. Dr. MacLane's Opinion**

On December 13, 2022, Dr. MacLane completed a psychological evaluation of Plaintiff. (*Id.* at 979-89.) Dr. MacLane observed that Plaintiff was sad, anxious, and agitated, had shaky speech, and moved around regularly during the evaluation. (*Id.* at 985.) Dr. MacLane reported that Plaintiff "demonstrated difficulty with attention and concentration and memory." (*Id.*) Following several diagnostic tests, Dr. MacLane diagnosed Plaintiff with PTSD, major

depressive disorder, generalized anxiety disorder, low income, provisional alcohol use disorder, and stimulant use disorder in remission. (*Id.* at 987.) She opined that if Plaintiff obtained a full-time job, it would be unlikely she could maintain the position. (*Id.* at 988.) Dr. MacLane also concluded that Plaintiff would likely have difficulty managing her psychologically-based symptoms if she worked full-time, would likely have difficulty working consistently with coworkers, and would likely have difficulty concentrating, persisting, and maintaining pace in a work environment. (*Id.* at 988-89.) She further noted that Plaintiff would likely have difficulty ignoring or avoiding distractions, identifying and solving problems, recognizing and correcting a mistake, and using reasoning and judgment to make work-related decisions. (*Id.* at 989.)

The ALJ found that Dr. MacLane's opinion was "not persuasive because it is not consistent with the record or supported by the evidence." (*Id.* at 30.) The Court finds that the ALJ failed to support his discounting of Dr. MacLane's opinion with substantial evidence. Specifically, the ALJ relied primarily on Plaintiff's alcohol use at the time and past drug use to discount Dr. MacLane's medical opinion without an adequate explanation[3] and did not otherwise explain why Dr. MacLane's opinion was not supported by medical evidence. (*Id.*) With respect to consistency, the ALJ again relied on the improper cherry-picked evidence addressed above. (*Compare id.* at 28-29 *with id.* at 30-31.)

For these reasons, the Court finds that the ALJ erred in evaluating Dr. MacLane's medical opinion.

[3] *See Jarvis v. Berryhill*, 722 F. App'x 616, 619 (9th Cir. 2018) (explaining that an ALJ should "proceed[ ] with the [initial] five-step inquiry without attempting to determine the impact of [the claimant's drug addiction and alcohol analysis ('DAA')] on his other mental impairments" and that "[i]f—and only if—the ALJ [finds that the claimant] was disabled under the five-step inquiry, should the ALJ . . . evaluate[ ] the role of [the claimant's DAA], if any, in establishing the limitations [at issue]" (quoting *Bustamante*, 262 F.3d at 955)).

## II. LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred by not providing germane reasons for discounting Gambill's lay witness testimony. (Pl.'s Br. at 17-20.) The Commissioner argues that the new regulations do not require ALJs to explain their evaluation of nonmedical sources. (Def.'s Br. at 7-8, quoting 20 C.F.R. § 416.920c(d).) Alternatively, the Commissioner argues that the ALJ's unchallenged findings discounting Plaintiff's subjective symptom testimony apply equally to discount Gambill's testimony. (*Id.*)

Similar to Plaintiff's testimony, Gambill reported that Plaintiff suffers from PTSD and gets triggered by external stimuli that cause her to shut down. (*Compare* Tr. 976, "[Plaintiff] reports that her body simply 'shuts down' periodically, when her PTSD is 'triggered.'" *with id.* at 43, "A lot of stuff happens to arise, assaults, thieving, especially people yelling in the store, and I would get extremely triggered, and just have panic attacks or a breakdown.") Both Plaintiff and Gambill also testified about Plaintiff's difficulties with keeping her household clean (*compare id.* at 45 *with id.* at 978) and that Plaintiff struggled with concentrating, persisting, and maintaining pace (*compare id.* at 1498 *with id.* at 977).

Plaintiff did not challenge the ALJ's discounting of her symptom testimony. Thus, even if the ALJ erred by not properly addressing Gambill's lay testimony, any error was harmless because Gambill's testimony was similar to Plaintiff's unchallenged symptom testimony. *See Yandrich v. Bisignano*, No. 25-4027, 2026 WL 2322819, at *1 (9th Cir. Aug. 11, 2026) ("The ALJ gave specific, clear, and convincing reasons for discounting [the claimant's] symptom testimony[.] . . . Because those reasons were valid, and because the lay testimony from [the third party] largely repeated [the claimant's] claims, the same reasons are germane grounds for discounting her testimony." (first citing *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); and then citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)));

*Olson v. Bisignano*, No. 25-434, 2026 WL 1724734, at *1 (9th Cir. June 15, 2026) ("[B]ecause the ALJ offered clear and convincing reasons for rejecting [the claimant's] testimony, those same reasons are necessarily germane to her friend's statements, which mirrored [the claimant's] subjective complaints." (citing *Valentine*, 574 F.3d at 694)); *Smith v. Bisignano*, No. 24-5118, 2025 WL 2452374, at *2 (9th Cir. Aug. 26, 2025) ("We need not address whether the ALJ was required to explain how he evaluated lay witness testimony because any error would be harmless. The testimony of these lay witnesses was similar to [the claimant's] own testimony, and so the ALJ's reasonable decision to discount [the claimant's] testimony 'appl[ied] equally well' to the testimony of these lay witnesses." (citing *Molina*, 674 F.3d at 1117)); *Finnegan v. Bisignano*, No. 24-3131, 2025 WL 1911155, at *2 (9th Cir. July 11, 2025) ("[S]ince [the lay witness] testimony was consistent with [the claimant]'s own testimony, the ALJ did not err in discounting it." (citing *Molina*, 674 F.3d at 1117)).

For those reasons, the Court finds that the ALJ did not err in evaluating the lay witness testimony.[4]

## III. REMEDY

Plaintiff asks the Court to remand for further administrative proceedings (Pl.'s Br. at 23; Pl.'s Reply Br. at 8), and the Court agrees that further proceedings are necessary to reevaluate the medical opinion evidence and modify Plaintiff's RFC, if appropriate. Accordingly, the Court remands the case for further administrative proceedings.

///

///

[4] Plaintiff also argues that the ALJ failed properly to account in the RFC for her moderate functional limitations (Pl.'s Br. at 20-23), but the Court does not reach that question in light of its remand for further proceedings to reevaluate the medical opinion evidence which may result in a modified RFC.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

**IT IS SO ORDERED.**

DATED this 30th day of September, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge